IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN C. COX | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FOSTER WHEELER, LLC et al. | : | NO. 24-305 |

MEMORANDUM

Bartle, J.                                    February 24, 2026

        David Cox was a pipefitter and insulator employed by
the Philadelphia Naval Shipyard from 1974 to 1987.  Cox was
diagnosed with lung cancer in August 2022 and died on September
4, 2022.  Jean C. Cox, his widow, as the Administratrix of his
estate and in her own right, has brought survival and wrongful
death actions against Watts Regulator Co. ("Watts"), among other
defendants.[1]  She asserts in her second amended complaint that
her late husband's death resulted from his exposure to asbestos
contained in Watts' steam traps and pressure reducing valves on
various Navy ships on which he worked between 1975 and 1983.
Subject matter jurisdiction is predicated on diversity of
citizenship.  See 28 U.S.C. § 1332(a)-(c).

---

[1]    The plaintiff originally sued Watts Water Technologies,
Inc., the parent company of Watts Regulator Co.  The court ruled
that it did not have personal jurisdiction over that entity
which was not established until after the events in question
here.  See Memorandum and Order dated July 29, 2025 (Docs. #88
and #89).  The plaintiff thereafter filed a second amended
complaint naming Watts Regulator Co. as a defendant.

Before the court is the motion of defendant Watts to
dismiss this action as to it for lack of personal jurisdiction
under Rule 12(b)(2) of the Federal Rules of Civil Procedure.[2]
The plaintiff has the burden of proof to establish that personal
jurisdiction exists.  Marten v. Godwin, 499 F.3d 290, 295-96 (3d
Cir. 2007).  The court allowed the parties discovery on this
issue.

I

David Cox died before this action was filed.  The only
evidence that supports liability comes from the deposition
testimony of Albert Pappalardo, his co-worker, in this and in a
different case.  Mr. Pappalardo testified that David Cox was in
Mr. Pappalardo's vicinity as Mr. Pappalardo removed, cut, and
installed asbestos-containing gaskets and packing layer from
"Watts" reducing valves.  Mr. Pappalardo's testimony covered
only the period between 1975 and 1983.

It is undisputed that Watts was incorporated in 1936
in the Commonwealth of Massachusetts and has its principal place
of business there.  Its business is the manufacture and sale of

---

[2]    A district court sitting in a diversity action can exercise
personal jurisdiction to the extent permitted under the law of
the state in which the district court is located.
Pennsylvania's long-arm statute allows for personal jurisdiction
to the extent permitted under the United States Constitution.
42 Pa. Cons. Stat. § 5322(b); Hasson v. Fullstory, Inc., 114
F.4th 181, 186 (3d Cir. 2024).

various plumbing devices including valves, and it has been engaged in that business ever since, including the period of 1975-1983.  It manufactures its products in Massachusetts and locations other than Pennsylvania.  During the period in question, Vernon Bitzer Associates, Inc. in the Philadelphia area and R.F. Luley Co. in Pittsburgh were its two sales representatives in Pennsylvania, although at times it sold directly to customers.  It also had a wholesale distributor in the Commonwealth.

        During discovery, Timothy Horne was deposed.  He was first employed by Watts in 1959.  In 1962 or 1963 he was named assistant to the president of Watts and became more familiar with the Watts product line.  He was promoted in 1976 to the position of president of Watts and in 1978 to CEO.  His retirement occurred in 2002.  According to Horne, Watts by 1963 was manufacturing pressure reducing valves and selling and distributing them in all fifty states.  Specifically, Watts valves were being sold through sales agents in Pennsylvania between 1975 and 1983.

        Vernon Bitzer was a sales representative for Watts from the 1960s through Horne's retirement in 2002.  It maintains an inventory of Watts products.  Hajoca was also a wholesaler of Watts products in Eastern Pennsylvania and sold Watts valves to customers in that area between 1975 and 1983.  Watts used sales

catalogues during this period to aid in the distribution and sale of their valves during this period.

David Steele, the principal or one of the partners of Vernon Bitzer Associates, testified it was founded in 1951 and has been representing Watts as a sales organization for nearly seventy years.  It connects with wholesale distributors such as Hajoca and others to sell Watts products among others.  Vernon Bitzer is the exclusive sales representative for Watts in the Philadelphia area.  Currently, 90% of its inventory consists of Watts products.  Steele confirmed that Watts has shipped its valves directly to customers in Pennsylvania.  He characterized Watts as a "very large company."

Patrick Daly, another principal and owner of Vernon Bitzer, confirmed that the company has been representing Watts since 1951.  Its website links to the Watts website.  Vernon Bitzer has been distributing Watts valves throughout its history and has no reason to dispute that it was doing so between 1975 and 1983.

Watts does not dispute any of the above facts. Nonetheless, it points out that there is nothing in the record to establish that the valves to which David Cox was exposed in Pennsylvania were sold to the Navy in Pennsylvania or sold to anyone else in Pennsylvania and then sold to the Navy.  The relevant events in this action occurred many years ago, and it

is not surprising that Watts and Vernon Bitzer no longer have records of its sales in Pennsylvania or anywhere else during the specific years in question, that is, 1975 through 1983.

II

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  A court may exercise general jurisdiction over a defendant when it is at home in the state where the action is brought.  A defendant generally is at home where it is incorporated and where it has its principal place of business.  Any claim may be asserted against a defendant in those states, regardless of the claim's connection to the forum.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).  Since Watts was incorporated in Massachusetts and has its principal place of business there, plaintiff does not assert that this court has general jurisdiction over it.

Plaintiff relies instead on specific jurisdiction, which is much more limited in scope than general jurisdiction. The Supreme Court's latest analysis of specific jurisdiction came in Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351 (2021).  For a court to have specific jurisdiction, the lawsuit must "arise out of or relate to the defendant's contacts with the forum."  Id. at 362 (quoting Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco

Cnty., 582 U.S. 255, 262 (2017)).  "Relate to" "contemplates
that some relationships will support jurisdiction without a
causal showing."  Id.  The Supreme Court cautioned that it does
not mean anything goes and that there are "real limits" in order
"to adequately protect defendants foreign to a forum."  Id.  It
explained that the court has specific jurisdiction in the forum
where a defendant serves a market for a product and the product
malfunctions there.  Id. at 363.

        In Ford, the Supreme Court had two cases before it for
review.  In one, a driver in Montana died in an accident
involving an allegedly defective Ford Explorer automobile.  In
the other, a passenger in an allegedly defective Ford Crown
Victoria in Minnesota was injured in an accident.  Both lawsuits
were filed in the respective state courts.  Ford moved to
dismiss both for lack of personal jurisdiction.  It asserted
that no causal connection existed between Ford's in-state
activity and the claims since the particular vehicles in
question had not been manufactured or sold by Ford in those
states.  The Supreme Court rejected Ford's position and
sustained personal jurisdiction in both cases.  It recounted
that Ford had an extensive presence in each state, had availed
itself of marketing among other activities, and had sold
Explorers and Crown Victorias there.  The lawsuits were
sufficiently related to Ford's in-state activities in Montana

and Minnesota to go forward.  In making this ruling, the Court
specifically noted that it was not deciding whether personal
jurisdiction would have been proper if Ford had not marketed the
specific models at issue, that is Explorers and Crown Victorias,
in those states.  Id. at 365.

       In this action, David Cox was a resident of
Pennsylvania.  He worked in Pennsylvania, and his death was
allegedly caused by exposure to asbestos in Watts products at
the Philadelphia Naval Shipyard in Pennsylvania.  Watts asserts
that the missing link for personal jurisdiction is the absence
of evidence that Watts itself or through a third party sold to
the Navy in Pennsylvania the Watts valves which caused Cox's
death.

       The Court in Ford has made it clear that a causal
connection between the defendant's in-state activity and the
plaintiff's injury is not always a prerequisite for specific
jurisdiction.  It is sufficient if the claim is "relate[d] to
the defendant's contacts with the forum."  Id. at 362 (quoting
Bristol-Myers Squibb Co., 582 U.S. at 262).  Yet as noted, this
principle is not without limits, and the Court specifically
declared it was not deciding whether relatedness required that
the defendant to have at least marketed to others in the same
state the very product that caused injury to the plaintiff.  As
Watts emphasizes, plaintiff cannot establish that the specific

                              7

asbestos-laden valves in question were sold in Pennsylvania or that they were marketed in Pennsylvania.  The court must decide whether this omission matters.

The <u>Ford</u> opinion relied heavily on <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980).  In that case, the purchasers of a car in New York sued Audi and Volkswagen as well as the New York car dealer and a New York regional car distributor in the state court in Oklahoma because the car caught fire in an accident there.  The Supreme Court agreed with the car dealer and regional distributor that the Oklahoma court did not have personal jurisdiction over them as they did not have business dealings of any kind in that state.  It contrasted their situation with Audi and Volkswagen, which did not contest jurisdiction and which had purposefully availed themselves of the privilege of conducting business in Oklahoma.  The Court in <u>Ford</u> emphasized this distinction.

There is no question that Watts is a large company that was selling valves in all fifty states during the period in question.  At all times relevant, it has availed itself of and exploited the market in Pennsylvania.  Watts not only has made direct sales of valves in the Commonwealth but also used extensively sales representatives and wholesalers in the Commonwealth to market and sell its products.  Due to the passage of time, it is not possible to determine if the Watts

valves on the ships on which David Cox worked at the
Philadelphia Naval Shipyard were sold or distributed to the Navy
in Pennsylvania.  Nor is it possible to determine the amount of
sales in Pennsylvania in the relevant period.  Yet the record
establishes that Watts' business activity in Pennsylvania
including the marketing and sale of valves was continuous and
deliberate, and it can reasonably be inferred that that activity
was not insubstantial as valves are a principal product line of
Watts.  Whether those valves were the exact models or types to
which David Cox was exposed is not known at this late date.  In
this court's view, it does not matter.  The significant point is
that Watts, as noted, was taking advantage of the market and
promoting its valves in Pennsylvania during the relevant time
period.  The facts here are much more closely aligned to those
of Audi, Volkswagen, and Ford than they are to the New York car
dealer and the New York regional car distributor.

Pennsylvania has a significant interest in providing a
forum for its residents like David Cox who allegedly suffer
injury or death in Pennsylvania from Watts valves.  Likewise,
Watts, which has purposely availed itself of conducting business
activities in the Commonwealth, must reasonably anticipate being
haled into court in this forum under such circumstances.  See
Ford Motor Co., 592 U.S. at 363-64, 367-68.  The court finds
that the business activities of Watts in Pennsylvania were

sufficiently related to the claims in this lawsuit to sustain specific jurisdiction over it and to allow this action against it to proceed in this court.

Accordingly, the motion of Watts to dismiss this action against it for lack of personal jurisdiction will be denied.