IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN C. COX | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FOSTER WHEELER, LLC, et al. | : | NO. 24-305 |

MEMORANDUM

Bartle, J. September 15, 2026

David Cox served in the Navy as a pipefitter and shipfitter from 1970 to 1974 and was a pipefitter and insulator employed by the Philadelphia Naval Shipyard from 1974 to 1987. Cox was diagnosed with lung cancer in August 2022 and died less than two weeks later. Jean C. Cox, his widow, as the Administratrix of his estate and in her own right, has brought survival and wrongful death actions against defendants John Crane, Inc. ("John Crane") and Watts Regulator Co. ("Watts"). She asserts in her second amended complaint that her late husband's death resulted from his exposure to asbestos contained in John Crane's packing and gasket materials as well as Watts' steam traps and pressure reducing valves on various Navy ships on which he worked.

Before the court are the motion by John Crane and the motion of Watts to exclude parts of the testimony and opinion of plaintiff's expert Captain R. Bruce Woodruff, a Naval Architect and Marine Engineer.

I

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The court is charged as a gatekeeper. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 597 (1993). Pursuant to Rule 104(a), this court must decide preliminary questions about whether the expert meets the requirements of Rule 702. It must determine if: (1) the expert is qualified; (2) the proposed testimony is reliable, that is supported by scientific methods and procedures; and (3) the proposed testimony fits the case, that is "sufficiently tied to the facts of the case." Cohen v. Cohen, 125 F.4th 454, 460 (3d Cir. 2025). It is not the role of the court to decide whether the expert is correct in his or her opinions. See Bourjaily v. United States, 483 U.S. 171, 175 (1987); In re Paoli R.R. Yard

PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Neither defendant disputes Captain Woodruff's qualifications as an expert in their motions to exclude his testimony.

II

Captain Woodruff is a naval architect and marine engineer who is an expert in the design, construction, operation, inspection, testing, trials, repair, and maintenance of naval vessels and commercial ships. He has a Bachelor of Science from the United States Naval Academy. He also holds two graduate degrees, a Master of Science in Mechanical Engineering and an Ocean Engineer in Naval Architecture and Marine Engineering, from the Massachusetts Institute of Technology.

During his twenty-nine years in the United States Navy, Captain Woodruff was responsible for the design, construction, and maintenance of a variety of naval vessels. He also oversaw shipyard contracts for the construction, overhaul, and repair of ships used by the Navy, Army, and National Oceanic Atmospheric Administration. As part of his tours of duty, he was a Ship Superintendent during the repair of two steam driven

destroyers from 1972 to 1973 and was the waterfront Production Engineer supporting twenty manufacturing shops from 1975 to 1979.

After his service in the Navy, Captain Woodruff was Vice President and Division General Manager for a company manufacturing and servicing large steam and gas turbines and generators for the utility industry. He has served as the President of Richmond Consulting Group, which consults on issues related to ship design and operations, shipyard construction and repair processes, government contracting, and asbestos exposure with corporations and government entities such as the Navy and Department of Justice since 1996.

Captain Woodruff opines that Cox likely received substantial exposure to asbestos while working at the Philadelphia Naval Shipyard between 1974 and 1987. To do so, he references the list of Navy ships on which Cox worked from 1974 to 1987. He focuses on nine of those ships in particular. Captain Woodruff stated in his report that "a significant amount of equipment repair and overhaul work was undertaken while Cox was present" on those ships, which would have involved "major tear down and removal of asbestos insulation, gaskets and packing." He opines that because of the amount of equipment in Main Machinery Rooms of ships, Cox would have been "in close proximity to the steam system equipment" and that "[d]uring the

overhaul on a carrier or for an overhaul on smaller ships, Cox and his team would have been exposed to mammoth sources of asbestos" from gaskets and packing which were often supplied to the Navy by John Crane.

He further opines that Navy equipment suppliers did not include warnings on asbestos-containing products. He notes that the vendors who supplied equipment for the ships on which Cox worked would have been aware that asbestos was hazardous as early as the 1950s and that they were aware of their obligation to place warnings on products shipped to the Navy by the 1970s. Additionally, he states that had vendors submitted caution and warning labels for equipment they supplied, the Navy would have included asbestos warnings in its technical manuals and drawings prior to 1980.[1] He points to several government issued documents to support his opinion that the Navy would have been receptive to suggestions from vendors and solicited feedback and input on technical matters in general.

John Crane seeks to exclude two categories of Captain Woodruff's opinions: (1) that the Navy would have included asbestos warnings if vendors had submitted them and that the Navy required warnings of hazardous materials and (2) that John

---

1 It is undisputed that the Navy, through a regulation amendment, mandated asbestos warnings on packaging of gasket and packing products beginning in 1980.

Crane products were on the USS America on which Cox worked from 1970 to 1974. Watts moves to exclude Captain Woodruff's opinion that its products were on the ships at issue.

III

John Crane challenges Captain Woodruff's methodology. If John Crane is correct, his opinion is unreliable. The proffered expert's opinion must "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742 (citation modified). There must be "good grounds" for the expert's belief. Id.

Factors the court may consider in evaluating whether a methodology is reliable include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

In re TMI Litig., 193 F.3d 613, 664-65 (3d Cir. 1999) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742). The party proffering the expert need only show by a preponderance of

evidence that the expert's opinions are reliable, not correct. In re Paoli R.R. Yard PCB Litig., 35 F.3d at 744.

Defendant John Crane specifically maintains that Captain Woodruff's methodology is unreliable with respect to how the Navy approached warnings between 1974 and 1980. First, it also argues that there is evidence that John Crane complied with the Navy's product specifications and inspection requirements. It next points to his changing answers during his deposition. When asked about the extent and timing of warning requirements, he variously testified that the Navy first required asbestos warnings in the early 1970s, mid-1970s, late 1970s and 1980. John Crane also contends that these changing answers were in part based on a peer-reviewed article on the Navy's engineering requirements and extent of approval, which in its view, Captain Woodruff misinterpreted. The article was written by Denish Rushworth, a former colleague of Captain Woodruff whom he describes as "very knowledgeable about asbestos." The Rushworth article concludes that that manufacturer requests to add an asbestos warning to materials would not have been approved by the Navy, let alone placed on equipment labels or manuals available to ship workers which is antithetical to Captain Woodruff's own opinions.

The court finds that Captain Woodruff's underlying methodology for evaluating asbestos warnings requirements is

reliable. "[S]urveying the full array of available sources, evaluating the reliability of the sources, and thus providing a basis for a reliable narrative about that past" is "proper historical work." Burton v. Am. Cyanamid, No. 07-CV-0303, 2018 WL 3954858, at *5 (E.D. Wis. Aug. 16, 2018) (citation modified); see also Langbord v. U.S. Dep't of Treasury, 832 F.3d 170, 195 (3rd Cir. 2016). Captain Woodruff conducted such a review of records and documents available in the early to mid-1900s to determine what packaging or warnings the Navy required and whether vendors submitted their own warnings or not. He reviewed a variety of documents from different sources, including both the military and vendors. He also relies on his extensive experience in the Navy during which he viewed many materials, equipment, technical manuals and drawings supplied by vendors to conclude that vendors knew about the hazardous nature of asbestos well before 1974 and that, prior to 1980, had vendors submitted asbestos warnings, the Navy would have included them.

It is not for the court to decide whether Captain Woodruff's opinions are correct. In re Paoli R.R. Yard PCB Litig., 35 F.3d at 744. But Captain Woodruff's conclusions that the Navy would have included warning labels had vendors supplied them "could reliably flow from the facts known to [Captain Woodruff] and the methodology used." In re TMI Litig., 193 F.3d

at 665-66. The accuracy and his certainty in his own expert opinion go to his credibility and the weight of his testimony, which is best addressed through cross-examination and presentation of contrary evidence. See Daubert, 509 U.S. at 596.

John Crane also contends that Captain Woodruff did not base his opinion on relevant documents. For instance, instead of referring to product specifications of John Crane's products beginning in 1974, when Cox was allegedly exposed to asbestos contained in those products, Captain Woodruff's report cites gasket specifications prior to 1974. Additionally, other Navy requirements and documents show that the Navy did not require asbestos warnings and that it controlled the wording of warnings. Furthermore, John Crane argues that Captain Woodruff should have considered the Navy's requirements for consumable suppliers, not equipment suppliers, and the MIL-STD-129, a document he described as a "Bible for shipping and packaging."

That Captain Woodruff did not rely on all available documents does not make his underlying methodology unsound. And while John Crane presents examples of contrary evidence, it is not for the court to evaluate whether the results of Captain Woodruff's proper methodology are correct. In re Paoli R.R. Yard PCB Litig., 35 F.3d at 744. The discrepancies and purported errors noted above can also be addressed by cross-

examination and presentation of contrary evidence at trial. Daubert, 509 U.S. at 596.

As such, the motion of defendant John Crane to exclude the testimony and report of Captain Woodruff as it pertains to the Navy's requirements for warnings will be denied.[2]

IV

Finally, John Crane argues that Captain Woodruff should not be permitted to opine that John Crane products were onboard the USS America from 1970 to 1974, when Cox served on it while in the Navy. It argues that this opinion is unreliable since there is no evidence that John Crane's products were on that ship, let alone near Cox, during that time. See In re TMI Litig., 193 F.3d at 665-66. While Captain Woodruff testifies about John Crane products on other ships where Cox worked, plaintiff concedes that there is no evidence identifying the

2 John Crane further argues that Captain Woodruff's opinions on the Navy's warning requirements do not fit the facts of the case because there is no evidence that Cox saw any packaging on which warnings could be placed or that he would have taken additional precautions as a result of seeing warnings. Captain Woodruff is not opining on whether Cox would have seen any warnings had they been provided. Rule 702's "fit" prong merely requires that an expert's opinion assist the trier of fact to be admissible. In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742-43. Captain Woodruff's opinion can be helpful to the fact-finders in determining whether Cox was exposed to asbestos on the ships on which he worked and whether vendors such as John Crane failed their duty to warn of the hazardous nature of asbestos. This is not a sufficient basis for excluding Captain Woodruff's opinions.

products onboard the USS America between 1970 and 1974 and that there is no intention of eliciting testimony from Captain Woodruff on this issue. John Crane's motion to exclude the testimony and opinion of Captain Woodruff as it pertains to the presence of John Crane products on the USS America from 1970 to 1974 will be granted.

V

Defendant Watts seeks to exclude Captain Woodruff's opinions that "Watts products were onboard the Naval Ships alleged to be at issue in this case" on the basis that his opinions are unreliable and do not fit the facts of the case. Watts specifically argues that Captain Woodruff's opinion that Cox was exposed to Watts products while he worked on Navy ships should be excluded as unreliable because Captain Woodruff did not follow the methodology he explained for identifying manufacturers of products containing asbestos found on the naval ships he evaluated for his report. His methodology involved reviewing the records and documents of ships on which Cox purportedly worked, as identified by Albert Pappalardo, Cox' co-worker. Using those documents, Captain Woodruff identified the equipment and materials on those ships. Watts does not challenge Captain Woodruff's methodology itself.

Captain Woodruff did not mention Watts in his expert report, which was written months before Watts was joined as a

party. But when asked at his deposition if he intended to offer any new opinions, he stated that he intended to opine on whether Watts supplied products to the Navy after reviewing materials cited in his written report and transcripts of Pappalardo's depositions. Plaintiff states that Captain Woodruff's opinion is not being offered to supplement other evidence showing that Mr. Cox was exposed to Watts' products. Instead, his opinion is proffered to "provide[] technical insight into how ships that contained equipment, such as valves and steam traps, operate, the maintenance and repairs required to keep vessels operational, and whether valve and steam trap manufacturers, such [as] Watts, were prohibited from placing warning labels on their equipment and in their manuals."

An expert witness may rely on facts to be learned at trial or a hearing and learned out of court. See Fed. R. Evid. 703; Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002); Reedy v. CSX Transp., Inc., No. CIV.A. 06-758, 2007 WL 1469047, at *4 (W.D. Pa. May 18, 2007). Once an expert identifies a factual foundation in the record, it is opposing counsel's burden to explore those facts and the expert's assumptions through cross-examination. Reedy, 2007 WL 1469047, at *4 (citing Stecyk, 295 F.3d at 414).

Captain Woodruff is not opining on what products Cox would have seen on the ships on which he worked. He is assuming

that Pappalardo's testimony is true and opining on how valves and steam traps like those made by Watts were kept, maintained, and repaired on ships and whether the Navy would have placed warning labels on equipment if Watts had submitted warnings. He is relying on Pappalardo's testimony that Watts products were onboard the ships on which Cox worked. This reliance is permissible under Rule 703. See also Fed. R. Evid. 702(b). Counsel for Watts may cross-examine Captain Woodruff on the factual assumptions underlying his opinion at trial. See Reedy, 2007 WL 1469047, at *4.

VI

Accordingly, the motion of defendant John Crane, Inc. to partially exclude the expert testimony and report of Captain R. Bruce Woodruff will be granted in part and denied in part. It will be granted to exclude the expert testimony of Captain Woodruff related to the presence of John Crane products on the USS America from 1970 to 1974. John Crane's motion will be denied as it pertains to the Navy's warning requirements and practices.

The motion of defendant Watts Regulator Co. to partially exclude the expert testimony and report of Captain Woodruff will be denied.