IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN C. COX | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FOSTER WHEELER, LLC et al. | : | NO. 24-305 |

MEMORANDUM

Bartle, J. November23, 2026

This is a wrongful death and survival action brought pursuant to federal maritime law under 28 U.S.C. § 1333[1] by Jean C. Cox, the widow and the administratrix of the Estate of David Cox. She has sued a number of defendants including Watts Regulator Co. ("Watts"). Cox was a pipefitter and insulator employed by the Philadelphia Naval Shipyard from 1974 to 1987. He was diagnosed with lung cancer in August 2022 and died less than two weeks later on September 4, 2022. Plaintiff alleges his death resulted from exposure to asbestos contained in the products of Watts as well as various other manufacturers on the ships on which he worked. She has brought claims on theories of strict liability, negligence, breach of warranty, and negligent misrepresentation.

1 28 U.S.C. § 1333 provides in relevant part that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction . . . ."

Before the court is the motion of defendant Watts to exclude the testimony of plaintiff's specific medical-causation experts, Dr. Daniel DuPont and Dr. Arthur Frank.

I

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The court is charged as a gatekeeper. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 597 (1993). Pursuant to Rule 104(a), this court must decide preliminary questions about whether the expert meets the requirements of Rule 702. It must determine if: (1) the expert is qualified; (2) the proposed testimony is reliable, that is supported by scientific methods and procedures; and (3) the proposed testimony fits the case, that is "sufficiently tied to the facts of the case." Cohen v. Cohen, 125 F.4th 454, 460 (3d Cir. 2025).

Defendant argues that the opinions of Dr. DuPont and Dr. Frank are not reliable and that they do not fit the facts of this case.

II

Dr. DuPont has been a board-certified pulmonologist since 1984. According to his deposition testimony, he treated patients with lung cancer and mesothelioma until he retired from patient care in August 2022. In the 1980s, he was certified as a consultant for individuals who were working or used to work at the Philadelphia Naval Shipyard as part of a program supervised by the United States Department of Labor. He also received numerous other state and federal certifications to determine disability status for those with lung diseases. He estimates that he has testified in dozens of trials.

Dr. Frank is a board-certified internal medicine and preventative medicine physician, with an M.D. from Mount Sinai School of Medicine of the City of New York and a Ph.D. in Biomedical Sciences from the City University of New York. Dr. Frank is a physician and professor of Public Health and Medicine at Drexel University. He has researched cancer, participated in epidemiologic studies of asbestos-exposed populations, and taught asbestos medicine and public health. He has also authored numerous peer-reviewed publications on the causes and prevention of asbestos-related disease, and he has previously

testified as an expert on asbestos exposure as a cause of mesothelioma and other asbestos-related diseases in numerous jurisdictions.

III

David Cox, as noted, died on September 4, 2022. It is undisputed that the cause of his death was lung cancer. Defendant also "does not dispute that lung cancer and asbestosis can be caused by asbestos, and that asbestos-related diseases are dose-responsive." Plaintiff has come forward with evidence that Watts products contained asbestos and asserts that Cox's exposure to those products were a substantial cause of his lung cancer. The issue before the court is whether plaintiff's experts have met the requirements of Rule 702 and the applicable laws so as properly to link Cox's death from cancer to Watts' products.

This lawsuit was not filed until December 19, 2023. As Cox died over a year before that date, he was not deposed. Instead, both experts rely on the deposition testimony of Albert Pappalardo, a co-worker of Cox at the Philadelphia Naval Shipyard, as to his exposure to Watts products.

Pappalardo recalls that he and Cox worked together on most of the twenty-six vessels on which Cox worked. Pappalardo testified that he handled Watts steam traps and valves while in Cox's vicinity. He stated generally that he saw Watts products

on every Navy vessel on which he worked and handled Watts products on many of those vessels.

Pappalardo also pointed out that he encountered a number of asbestos-containing products by other manufacturers. These included: air conditioners made by Carrier; boilers made by Babcock & Wilcox and Foster Wheeler; gaskets and packing made by Cranite, Flexitallic, Garlock, Goodyear, Greene Tweed, and John Crane; pumps made by DeLaval, Foster Wheeler, Gorman Rupp, Goulds, Ingersoll Rand, Peerless, Taco, Warren, and Worthington; and turbines made by General Electric and Westinghouse. In addition to steam traps and valves made by Watts, Pappalardo worked with steam traps made by Velan, and valves made by Anchor Darling, Copes Vulcan, CPV, Crane, Grinnell, Marrata, Milwaukee, Nibco, Powell, Spirax Sarco, Velan, and Zurn.

The only ship Pappalardo specifically identified as having Watts products onboard was the USS Nimitz, on which he began working in late 1989. Cox was no longer employed at the Philadelphia Naval Shipyard after 1987. There is no evidence that Cox ever worked on the USS Nimitz. Furthermore, Pappalardo was specifically asked about ten of the Navy vessels on which he and Cox both worked. He did not remember handling any Watts products on those ten ships. Pappalardo further recounted that because he and Cox did not work in the same shop, they did not

work together every day and that there could have been weeks or months when they did not see each other.

Both experts list in their reports the numerous asbestos-containing products and manufacturers named by Pappalardo and opine that Cox's cumulative exposure to asbestos at the Philadelphia Naval Shipyard contributed to his lung cancer and asbestosis he developed.

Dr. DuPont specifies that because Cox was a non-smoker with "mild preexisting conditions," he had "no difficulty concluding that the patient's lung cancer was caused by his cumulative exposure to asbestos[.]"[2] He opines in his report:

> Specifically, the occupations [?] and <u>various products</u> containing asbestos to which he was exposed were substantial contributing factors to his metastatic small cell lung cancer that was the direct cause of his death. (emphasis added)

At the end of his report, he opines:

> I have concluded that [Cox's] regular and frequent exposure to <u>those products</u> and <u>types of products</u> mentioned in this report resulted in the contribution to the cumulative fiber burden realized by Mr. Cox and causative of his disease. (emphasis added)

---

2 Dr. DuPont also stated in his first report that Cox's condition could be attributed to his tobacco consumption while repeatedly noting elsewhere in his report that Cox did not smoke. Dr. DuPont supplemented his report to correct his misattribution of Cox's condition to tobacco consumption.

In his report, Dr. DuPont says nothing specifically about the exposure of Cox to Watts products.

During his deposition, Dr. DuPont noted that "the documents reviewed indicated that [Watts products] would be part of the cumulative exposure that [Cox] realized." Significantly, Dr. DuPont acknowledged that he was not quantifying the amount of Cox's alleged exposure to asbestos from Watts products or relying on another expert's quantification of Cox's alleged exposure. He did not know how many times or how close Cox may have been to Pappalardo while Pappalardo worked on Watts steam traps or valves. He also testified that "lung cancer is a disease with higher cumulative doses [of asbestos exposure] required."

Dr. Frank, after reviewing Cox's radiology records, opines in his report that Cox developed asbestosis and lung cancer and that he died as a result. He further concludes:

> The cumulative exposure [Cox] had to asbestos at the Philadelphia Naval Shipyard would have contributed to his developing these two conditions, with his lung cancer leading to his cause of death. All of his exposures would have been at levels above background, would have been medically significant, and therefore medically causative of his lung cancer and his asbestosis.

He too lists the many manufacturers of asbestos-containing products including Watts products to which Cox was exposed.

In an attached affidavit, Dr. Frank explains that the mainstream scientific consensus is that all forms of asbestos can and do cause lung cancer and asbestosis. He notes that "evidence shows that even low level exposures to asbestos causes a substantial number of lung cancers in occupationally exposed workers" and cites multiple studies that linked cancer to low total exposure. In neither the report nor his affidavit does he specifically discuss the extent of Cox's exposure to Watts products.

Dr. Frank recounted at his deposition that Cox's radiology records showed calcified bilateral pleural plaques on his lungs and that "the only time I've ever seen that in my career, . . . , it's caused by exposure to asbestos." When asked to assume that Cox was exposed to or breathed in asbestos-containing dust from gaskets used on Watts valves and steam traps "on a regular, frequent and proximate basis," Dr. Frank stated that he believed that such exposures would have been a substantial contributing factor to Cox's lung cancer and subsequent death. However, he testified that he was not quantifying or relying on another expert's quantification of the amount of Cox's alleged exposure to asbestos from Watts products. He also did not know how frequently or have a definite measurement of how close Cox was to Pappalardo while Pappalardo worked with Watts products. He further testified

that while Cox's exposure to a "significant amount of asbestos" caused his asbestosis, "any amount of asbestos above background [levels] would have in and of itself been sufficient to initiate his lung cancer, but it is also well documented that the addition of more and more asbestos increases the risk of developing a lung cancer."

IV

To establish specific causation under federal maritime law on which this action is predicated, plaintiff must show that her husband had a "high enough level of exposure" from the defendant's product so "that an inference that the asbestos was a substantial factor in the injury is more than conjectural." Lindstrom v. A-C Prod. Liab. Tr., 424 F.3d 488, 492 (6th Cir. 2005), abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries, 586 U.S. 446 (2019); see also Krik v. Exxon Mobil Corp., 870 F.3d 669, 674-75 (7th Cir. 2017); McIndoe v. Huntington Ingalls Inc., 817 F.3d 1170, 1176 (9th Cir. 2016). Merely showing "minimal exposure" is insufficient to establish causation, and a defendant "cannot be held responsible for the asbestos contained in another product." Lindstrom, 424 F.3d at 492-93, 496; see also McMunn v. Babcock & Wilcox Power Generation Grp., Inc., 869 F.3d 246, 268-71 (3d Cir. 2017).

Defendant argues that both experts' opinions are unreliable because they are not grounded in and do not reliably

flow from the facts of this case. The proffered expert's opinion must "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (citation modified). There must be "good grounds" for the expert's belief. Id.

Factors the court may consider in evaluating whether a methodology is reliable include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

In re TMI Litig., 193 F.3d 613, 664-65 (3d Cir. 1999) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742). The party proffering the expert need only show by a preponderance of evidence that the expert's opinions are reliable, not correct. In re Paoli R.R. Yard PCB Litig., 35 F.3d at 744. The expert's conclusions must "reliably flow from the facts known to the expert and the methodology used." In re TMI Litig., 193 F.3d at 665-66. The test of reliability is "a flexible one" that

focuses "on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 594-95.

As noted above, plaintiff must establish that the defendant's "product was a substantial factor in causing the injury he suffered." Lindstrom, 424 F.3d at 492. To do so, she must show a "high enough level of exposure" to the defendant's product specifically, because a defendant may not be held liable for harm caused by another defendant's products. Id. at 492, 493.

Based on the testimony of Pappalardo and Cox's medical records, Dr. DuPont and Dr. Frank both opine in their reports that a substantial contributing factor to Cox's cancer was the accumulation of asbestos exposure from the numerous asbestos-containing products at the Philadelphia Naval Shipyard. Watts asserts that Pappalardo's testimony fails to establish that Cox was exposed to its products at all, let alone frequently or regularly enough to show substantiality. Taking the evidence in the light most favorable to plaintiff, the testimony of Pappalardo does not establish that Cox's exposure to the asbestos in Watts products was substantial, particularly when considering that asbestos was contained in products of numerous other manufacturers found on the naval vessels on which Cox worked.

Pappalardo testified that he handled Watts steam traps and valves near Cox. However, he only specifically recalled seeing Watts valves beginning in 1989, after Cox retired, on the USS Nimitz, a ship on which Cox did not work. Pappalardo did not remember working with Watts products on ten of the Navy vessels on which he worked together with Cox, and the record is silent as to the presence of Watts products on the remaining sixteen vessels on which they both worked. Pappalardo also listed a number of other asbestos-containing products he worked with in Cox's vicinity made by at least twenty-three other manufacturers. He admitted that they did not work together every day and that there were weeks or months when he did not see Cox. His testimony alone is insufficient to establish the regularity or frequency with which Cox was exposed to any of the allegedly asbestos-containing products, let alone to Watts' products.

Plaintiff's experts, Watts argues, merely advance what in reality is an "each-and-every-exposure theory," that is that any exposure to asbestos, no matter how brief or small, is a substantial contributing factor to developing an asbestos-related disease. This theory has been rejected by multiple courts considering product-liability claims under maritime law. See id. at 493; McIndoe, 817 F.3d at 1177-78 n.8; Krik, 870 F.3d at 677. In Krik, the Seventh Circuit upheld the district

court's exclusion of Dr. Frank's opinions based in the each-and-every exposure theory. It noted that the district court, applying federal substantive law, found that this theory "ignored fundamental principles of toxicology that illnesses like cancer are dose dependent." 870 F.3d at 675.

Plaintiff counters that Dr. DuPont and Dr. Frank do not proffer the each-and-every-exposure theory. Instead, she argues that they opine that Cox's every exposure to asbestos contributed to a cumulative dose of asbestos, leading to his development of lung cancer. Both Dr. DuPont and Dr. Frank testified that they did not rely on any quantifications of Cox's alleged exposure to asbestos from Watts products and that they did not know how often or close Cox may have been to Watts products. In their reports, they merely state that Cox was exposed to asbestos-containing Watts products without describing or quantifying the frequency or regularity of such exposures. This cumulative exposure theory has been construed as different from the each-and-every-exposure theory by other district courts and the Pennsylvania Supreme Court. See Young v. John Crane, Inc., No. CV 21-4493, 2024 WL 5453789, at *1 n.1 (E.D. Pa. June 10, 2024); Erhardt v. BMW of N. Am., LLC, No. 3:18-CV-1327, 2021 WL 171041, at *20-21 (D. Conn. Jan. 18, 2021); Rost v. Ford

Motor Co., 151 A.3d 1032 (Pa. 2016).[3] Other courts have excluded opinions based on the cumulative exposure theory, finding it to be no different from the each-and-every-exposure theory. See Krik, 870 F.3d at 675-78.

Whether these two theories are different or in effect the same makes no difference here as both disregard that liability of a party in maritime cases depends on the exposure to that party's product to such an extent as to be a substantial factor in causing a person's cancer. Neither the each-and-every exposure theory nor the cumulative exposure theory is concerned with the extent of any particular exposure or with the particular product to which a party was exposed. Dr. DuPont's theory is that the totality of Cox's asbestos exposure contributed to a "cumulative [asbestos] fiber burden" that was significant, but he does not identify any sole product or

---

3 Although the Pennsylvania Supreme Court held that the cumulative exposure theory was a generally accepted methodology, the underlying facts in Rost are distinguishable from those in issue in this case. There, the plaintiff testified that he came into close contact with asbestos lining and dust from products manufactured by Ford on a nearly daily basis for three to four months. He explained that approximately eighty-five to ninety percent of the vehicles serviced at the garage he worked at were Ford vehicles. He detailed what kind of work he and others performed on asbestos-containing products manufactured by Ford, how close he was to that work, and how often that work was performed. He also described his subsequent asbestos exposure from products created by other manufacturers and the precautions he took to avoid inhaling asbestos. Plaintiff has not established similar facts here.

manufacturer as a significant contributing factor to Cox's cancer. Likewise, Dr. Frank does not differentiate between manufacturers and opines that every exposure is "medically significant, and therefore medically causative of Cox's lung cancer and his asbestosis." As noted, there is no evidence in the record as to the frequency, regularity, or proximity of Cox's exposure to Watts products. See generally Krik v. Crane Co., 76 F. Supp. 3d 747, 753 (N.D. Ill. 2014), aff'd sub nom. Krik v. Exxon Mobil Corp., 870 F.3d 669 (7th Cir. 2017). The expert opinions of Dr. DuPont and Dr. Frank fail the reliability requirement of Rule 702 as they are totally at odds with the underlying facts taken in the light most favorable to plaintiff.

V

The motion of defendant Watts Regulator Co. to exclude the testimony of Dr. DuPont and Dr. Frank will be granted.